**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**JAMES TUCKER,**

     **Plaintiff,**

**vs.**                                        **CASE NO. 4:06CV299-RH/AK**

**MONICA DAVID, et al,**

     **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that the Florida Parole Commissioners (Monica David, Frederick Dunphy, and Tena Pate) have violated his constitutional rights under the Ex Post Facto and Due Process Clauses. (Doc. 11).  Defendants have filed a special report (doc. 21), which has been construed as a motion for summary judgment.  (Doc.22).  Plaintiff was advised of his obligation in responding to the motion for summary judgment (doc. 23), but no response has been filed.

**I.**     **Allegations of the Complaint (doc. 11)**

Plaintiff claims that the parole commissioners have violated the Ex Post Facto Clause in the following ways: by changing the review period from annual to biannual and then to every 5 years because this is not the same process in effect at the time of his offense and by reducing the number of commissioners from seven to three.  He also

claims that his due process rights are violated: by using witness statements at the hearing which were not made prior to sentencing; by not allowing him to be present at the final hearing or to have counsel appointed for this hearing; and by not providing him notice prior to the extraordinary review.  He claims that his equal protection rights are also being violated since he is allowed to be present at one parole hearing, but not the final one.

As relief, Plaintiff seeks compensatory damages, reinstatement of annual hearings and a seven member commission, the disallowance of new evidence or new information that did not exist prior to his original sentencing, and notice and the opportunity to be heard at the parole hearing.

## II.    Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material

**No. 4:06cv299-RH/AK**

facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  <u>Mize v. Jefferson City Board of Education</u>, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

No. 4:06cv299-RH/AK

### III.    Defendants Rule 56(e) evidence

a)    <u>Sentencing papers (exhibit A)</u>

Plaintiff received two consecutive life sentences on October 3, 1967, for Rape;

twenty years for Sodomy to run consecutive to the life sentences; five years for

Aggravated Assault to run concurrently with the life sentences; and ten years for a Lewd

and Lascivious Act with a child under 14, also to run concurrently.

b)    <u>Initial Parole review (exhibit B)</u>

Plaintiff received his first parole interview on June 27, 1979, and a presumptive

parole release date (PPRD) was established for May 3, 1997.

c)    <u>Biennial/Special Interview Commission Action (exhibit C)</u>

The specific actions taken by the parole commission are set forth in Defendant's

motion at pp. 2-4, which establishes that Plaintiff had reviews every two years until

February 10, 1999, when the commission voted to extend the review periods to five

years because of Plaintiff's rape conviction.

d)    <u>Effective Parole Release Date Interview (exhibit D)</u>

At his August 24, 2005, effective parole release date interview his case was

referred to the full commission for extraordinary review pursuant to Section 947.18.

e)    <u>Extraordinary Review (exhibit E)</u>

At the meeting before the full commission on October 19, 2005, the commission

voted to suspend his PPRD because "the Commission has been unable to find that

there is a reasonable probability that, if you are released on parole, you will live and

conduct yourself as a respectable and law-abiding person and that your release will be

**No. 4:06cv299-RH/AK**

compat6ible with your own welfare and the welfare of society."  The Commission based this finding on the nature of the crimes of which he was convicted, his military history, his history while incarcerated, and mental health assessments.  The commission then set off his next parole hearing for the month of June 2010 (five years) because "it is not reasonable to expect that you will be granted parole during the following years" because of the extent of the trauma to the victims, the fact that there were multiple victims, that there had been an escalating pattern of criminal conduct, the crime was heinous, and his mental health concerns convinced them that any release would pose a risk to the public.

      f)     <u>Williams v. Henry, Case No. 99-0271-CV-4-RH (April 30, 2001)</u>

This decision from the United States Court of Appeals for the Eleventh Circuit arising out of the Northern District of Florida held that the 1997 changes to Florida's parole statute "produces no sufficient risk of increasing [Plaintiff's] measure of punishment, and he has no liberty interest in parole, [therefore] defendants have not violated [Plaintiff's] due process or <u>ex post facto</u> rights."  The court added, "It [the parole statute] does not alter the standards for determining the initial date for consideration of parole, the parole board states its findings in writing and the Commission still has discretion to alter the frequency of parole hearings."

      g)     <u>Walker v. Henry, Case No. 99-0098-CV-4-WS (March 15, 2001)</u>

This decision from the United States Court of Appeals for the Eleventh Circuit arising out of the Northern District of Florida held that the 1997 Florida parole statute that extends the time between parole hearings does not implicate the due process

**No. 4:06cv299-RH/AK**

clause of the constitution because the Parole Board has unfettered discretion to grant or deny parole, it is an act of grace not a right and it is "clear law of this circuit that a change that alters the Commission's considerations for parole suitability is not violative of the Ex Post Facto Clause," citing several cases.  Specifically, the court applied factors set forth in <u>California Dept. Of Corrections v. Morales</u>, 514 U.S. 499 (1995), to the 1997 statute and found that the statute is narrowly tailored as per Morales and not violative of the Ex Post Facto Clause.

        h)    <u>Bradley v. Henry, Case No. 00-0083-CV-4-WS (June 13, 2002)</u>

            (Same)

        i)    <u>Chestnut v. Henry, Case No. 99-00511-CV-RH (November 21, 2002)</u>

            (Same)

## IV.    Analysis

        a.    <u>Ex Post Facto claim</u>

The offenses with which Plaintiff was charged and subsequently convicted occurred in 1967, and Plaintiff claims that changes to the Florida parole statutes since the date of his crimes have had "detrimental affects."  Several changes have occurred in

**No. 4:06cv299-RH/AK**

the parole review process since this time, specifically amendments in 1978[1] and 1997[2].

Although Plaintiff specifically cites only the 1997 amendments, since both the 1978 and

1997 statutes changed the frequency of parole interviews since Plaintiff's offense, the

Court will address both statutes.

The determining factor in assessing statutory changes in light of the Ex Post

Facto Clause Is whether the change has effectively increased Plaintiff's term of

confinement or created "a sufficient risk of increasing the measure of punishment . . . ."

California Dep't of Corrections v. Morales, 514 U.S. 499, 509, n.4, 115 S. Ct. 1597,

1603, n.4, 131 L. Ed. 2d 588 (1995).    In Morales, the law at the time of offense

provided for annual parole consideration hearings.  514 U.S. at 503.  Later amendments

permitted up to a three year delay in parole hearings for prisoners who "ha[d] been

convicted of 'more than one offense which involves the taking of a life' and if the Board

'[found] that it [was] not reasonable to expect that parole would be granted at a hearing

---

[1]    "For every inmate convicted of murder, attempted murder, sexual battery, attempted sexual battery, or who has been sentenced to a 25 year minimum mandatory sentence previously provided in § 775.082, and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview fore review of the presumptive parole release date.  Such interview shall take place once within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing." FLA. STAT. § 947.174(1) (1979)

[2]    "For any inmate convicted of murder, attempted murder, sexual battery, or who has been sentenced to a 25 year minimum mandatory sentence previously provided in § 775-082, and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date.  Such interview shall take place once within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing.  FLA. STAT. § 947.174(1)(b) (1997).

**No. 4:06cv299-RH/AK**

during the following [two] years and state[d] the bases for the findings.'" *Id.*, at 503.[3]  A

significant consideration for the <u>Morales</u> Court was whether the law had any effect on

the date of a prisoner's initial parole suitability hearing or whether it affected only the

timing of subsequent hearings.[4]  Also significant was the fact that the amended parole

statute applied "only to a class of prisoners for whom the likelihood of release on parole

[was] quite remote."  *Id.*, at 510.  From this the Court concluded:

> In light of the particularized findings required under the amendment and
> the broad discretion given to the Board, the narrow class of prisoners
> covered by the amendment cannot reasonably expect that their prospects
> for early release on parole would be enhanced by the opportunity of
> annual hearings.

*Id.*, at 512.  The Court held that the new law "create[d] only the most speculative and

attenuated risk of increasing the measure of punishment attached to the covered

crimes," *id.*, at 514, and, thus, did not violate the Ex Post Facto Clause.

To violate the Ex Post Facto Clause, a new statute must inflict "a greater

punishment, than the law annexed to the crime, when committed."  <u>Lynce v. Mathis</u>, 519

U.S. 433, 441, 117 S. Ct. 891, 895, 137 L. Ed. 2d 63 (1997), *quoting*, <u>Calder v. Bull</u>, 3

Dall. 386, 390, 1 L. Ed. 648 (1798).  An ex post facto law applies to "events occurring

before its enactment" and disadvantages the offender by "altering the definition of

criminal conduct or increasing the punishment for the crime."  <u>Lynce</u>, 519 U.S. at 441,

---

[3]  The statutes at issue here apply to a broader category of inmates than was the case in <u>Morales</u>.  <u>See</u> notes 1 and 2.  However, the Supreme Court in <u>Garner v. Jones</u>, 529 U.S. 244, 256, 120 S. Ct. 1362, 1370, 146 L. Ed. 2d 236 (2000), held that the number of prisoners affected by the change in law was "not dispositive" of the issue. <u>Garner</u>, 120 S. Ct. at 1368.  The over-riding question is whether an amended statute "creates a significant risk of prolonging [an inmate's] incarceration."  *Id.*

[4]  The only issue Plaintiff raises is with the timing of subsequent parole hearings.

**No. 4:06cv299-RH/AK**

117 S. Ct. at 896, *quoting* Collins v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990).  Thus, the issue is "whether [the new law] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509, 115 S. Ct. at 1603.  Analysis of this question should consider only objective considerations, Lynce, 519 U.S. at 443, 117 S. Ct. at 443, and is a question of degree.  Morales, 514 U.S. at 509, 115 S. Ct. at 1603 (citation omitted). Where a statute is not unconstitutional on its face, the Court must consider whether the "level of risk" has, in actuality, increased "to a significant degree, the likelihood or probability of prolonging" the claimant's term of incarceration.  Garner v. Jones, 529 U.S. 244, 256, 120 S. Ct. 1362, 1370, 146 L. Ed. 2d 236 (2000), *reversing* 164 F.3d 589 (11th Cir. 1999).  In Garner, the Supreme Court considered a Georgia parole regulation which permitted delay in parole reconsideration from three years (at the time of the crime) to only once every eight years for prisoners serving life sentences and held that it did not violate the Ex Post Facto Clause.  The Court noted that in order to evaluate the level of risk, a plaintiff must present sufficient information so that any decision rendered is not simply speculative.  *Id.*, at 1371-72.  Parole cases alleging an ex post facto violation "must be made on a case-by-case basis."  Harris v. Hammonds, 217 F.3d 1346, 1350 (11th Cir. 2000) (vacating dismissal by district court and remanding to allow plaintiff "to make the showing required by the Supreme Court in Jones.").

Thus, Plaintiff's burden in opposing summary judgment is to affirmatively show that the 1978 and 1997 amendments have disadvantaged him and produced a "sufficient risk of increasing the measure of punishment attached to the covered

**No. 4:06cv299-RH/AK**

crimes." <u>Morales</u>, 514 U.S. at 509, 115 S. Ct. at 1603; *see also* <u>Garner</u>, 529 U.S. at 255, 120 S. Ct. at 1370.  Plaintiff here has offered no evidence to show how either the 1978 or 1997 changes to the parole statute increased the risk that his incarceration would be prolonged.  Specifically, Plaintiff has come forward with no evidence to show that it is likely he would be released during the two to five year interim between parole consideration hearings, or that more frequent parole consideration hearings would result in his speedier release.   Plaintiff's original sentence was two consecutive life sentences for rape and other sentences to run concurrently. Plaintiff's psychiatric records revealed an unhealthy and unresolved attitude towards women that persisted despite the completion of anger management programs, sex offender treatment, and other mental health therapies, so that it was believed likely that these attitudes would resurface under stressful circumstances outside the institutional setting he was now confined in.  Plaintiff had failed to take complete responsibility for his acts and appeared to be remorseful only in a superficial way, expressing himself in a manner he perceived to be appropriate, but which was not genuine.  Thus, it was anticipated and feared that he would be a significant risk to the public if he were released.  (Doc. 23, Exhibit E).  Under these circumstances, it is not likely that Plaintiff would be released even if he were to be considered for release with more frequency.

Further, the Eleventh Circuit has addressed the constitutionality of the 1978 amendments and 1998 amendments to the parole statutes and held that they do not violate the Ex Post Facto Clause.  <u>See</u> <u>supra</u>;  <u>Damiano v. Florida Parole and Probation</u>

**No. 4:06cv299-RH/AK**

Commission, 785 F.2d 929, 933 (11ᵗʰ Cir. 1986); Paschal v. Wainwright, 738 F.2d 1173

(11ᵗʰ Cir. 1984); Jones v. Garner, 164 F.3d 589 (11ᵗʰ Cir. 1999).

As to the claim that the Ex Post Facto Clause is violated by the reduction in

commission members from seven to three,[5] Plaintiff has neither explained nor provided

any evidence that this change has had a detrimental effect upon him or more

specifically prolonged his term of incarceration.

  b. Due Process claims

Likewise as to Plaintiff's due process claims,[6] the state legislature in Florida, as

well as the courts interpreting these laws are universal that there is no constitutional

right to parole, and therefore, no liberty interest in parole.  Jonas v. Wainwright, 779

F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986), *citing* Hunter v. Florida

Parole & Probation Comm'n, 674 So. 2d 847, 848 (11th Cir. 1982) Moore v. Florida

Parole & Probation Comm'n, 289 So. 2d 719 (Fla. 1974).[7]

The only potential exception is the use of false information by the Parole

Commission.  Monroe v. Thigpen, 932 F.2d 1437 (11th Cir. 1991) (holding that a Parole

---

  [5] Apparently the number of commissioners has changed frequently over the years since Plaintiff's conviction from five in 1967 to eight in 1975 to nine in 1985 to six in 1987 to seven in 1988 to nine in 1990 to seven in 1995 to three in 1996. Fla. Stat. section 947.01, as amended.

  [6] Plaintiff complains that the commission used statements not made or otherwise in existence at the time of his offense at his parole hearings, would not allow him to be present at the parole hearings, would not appoint counsel for him to represent him at these hearings, and did not give him notice that the extraordinary review was scheduled.

  [7] "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right." FLA. STAT. § 947.002(5).

**No. 4:06cv299-RH/AK**

Board's discretion does not permit it to knowingly relying on false information to deny an inmate parole), *relying on* <u>Thomas v. Sellers</u>, 691 F.2d 487, 489 (11th Cir. 1982) (stressing that "absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."); <u>Damiano v. Florida Parole and Probation Comm'n</u>, 785 F.2d 929, 932 (11th Cir. 1986)(finding that the inmate "raised a colorable due process claim with respect to the use of procedurally flawed disciplinary reports in modifying a PPRD.").   In this case, Plaintiff does not make this claim.  Thus, summary judgment must be granted in Defendants favor on the due process claims as well.

      c.    <u>Equal Protection</u>

Plaintiff makes no assertion that he is a member of a protected class nor does he otherwise explain how he was treated differently from similarly situated inmates.  The amendments of which he complains have been applied to all inmates within the Florida Department of Corrections insofar as the Court is aware, and Plaintiff has offered nothing to the contrary.

      d)    <u>Immunity</u>

Finally, individual parole board members are absolutely immune from any claim for damages because of the quasi-judicial nature of their decision making.  <u>Allen v. United States</u>, 2007 WL 3145091 (M.D. Fla. October 25, 2007).  The board members are not barred from injunctive relief because of this immunity, <u>Fuller v. Georgia State Bd. of Pardons</u>, 851 F.2d 1307, 1310 (11th Cir. 1988), but as set forth above, the

**No. 4:06cv299-RH/AK**

undersigned finds no merit in any of Plaintiff's claims so that he is not entitled to injunctive relief either.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (doc. 23) be **GRANTED**, and this cause **DISMISSED**.

**IN CHAMBERS** at Gainesville, Florida, this 31st Day of December, 2007.

s/ A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 4:06cv299-RH/AK**